STATE of Iowa, Appellee,

v.

Michael Allen COX, Appellant.

No. 92–332.

Supreme Court of Iowa.

May 19, 1993.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., W. Wayne Saur, County Atty., and John F. Hofmeyer III, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

Although other issues are raised in this appeal, the determinative issue is whether there is substantial evidence in the record to support the defendant's conviction of vehicular homicide. Finding insufficient evidence to support the judgment of conviction, we reverse.

I. *Background.*

At about 10:30 a.m. on October 8, 1990, a pickup truck operated by twenty-four-year-old Michael Allen Cox collided with a mini-van operated by seventy-seven-year-old Roland Kueker in the intersection of two county roads in rural Fayette County. As a result of the collision, Kueker was killed and Cox received minor injuries.

The Kueker vehicle was proceeding north on Highway V–68. The Cox vehicle was proceeding east on Highway C–33, facing a stop sign at the intersection. The vehicles collided and came to rest in the northeast corner of the intersection. The Kueker vehicle left no preimpact skid marks; the Cox vehicle left approximately a five-foot skid mark prior to impact.

Following the collision, Cox was taken to the Sumner Hospital and, after examination and treatment, was released. While at the hospital he was interviewed by two members of the Iowa highway safety pa-

trol. Cox was asked to provide a breath sample although the troopers found no evidence at the accident scene to suggest he had consumed any alcohol. The test was administered in the hospital and it showed no alcohol in his system.

On April 1, 1991, the State filed a trial information charging Cox in two counts. Count I charged him with homicide by vehicle, a class "C" felony. Count II charged him with driving while his license was revoked, a serious misdemeanor. Prior to trial, Cox entered a plea of guilty to count II. The judgment and sentence entered upon the guilty plea to count II was not challenged in this appeal.

The remaining charge of homicide by vehicle was tried to a jury. Cox moved for a judgment of acquittal at the close of the State's evidence and the motion was renewed at the close of all evidence. *See* Iowa R.Crim.P. 18(8). The district court reserved ruling on the motion until after the jury had returned its verdict. The court instructed the jury upon the charge of homicide by vehicle. The jury, after requesting and receiving an additional instruction from the court, returned a guilty verdict. Prior to sentencing, the court denied the defendant's motion for a judgment of acquittal. The court sentenced Cox to be confined for a term not to exceed ten years and ordered that he make restitution to the victim's estate. Cox appeals this judgment.

On appeal Cox urges he did not receive effective assistance of counsel. He claims his trial counsel failed to request a lesser included offense instruction and failed to challenge the district court's instruction to the jury after the jury had retired. He also claims the evidence was insufficient to support a finding of guilty of homicide by vehicle. Because our decision on this issue is dispositive, we need not address the other issues.

## II. *Scope of Review.*

▪ In determining whether there is substantial evidence to support the jury verdict, we view the record evidence in the light most favorable to the State. *State v.*

*Torres*, 495 N.W.2d 678, 681 (Iowa 1993). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* In determining whether there is substantial evidence, we consider all the record evidence not just the evidence supporting guilt. *Id.*

## III. *Evidence in Record.*

Cox stipulated that Kueker had died as a result of injuries he received in the collision. To establish the charge, the State offered the testimony of two troopers. The troopers testified there was an unobstructed view of the intersection for four-tenths of a mile to the east and one-quarter of a mile to the south. There were rumble strips 990 feet, 660 feet and 340 feet from the stop sign and a "stop ahead" sign 765 feet from the stop sign. The Cox pickup weighed approximately 4600 pounds. It struck the Kueker minivan, weighing approximately 3200 pounds, broadside. It was misting, drizzling or raining at the time of the accident.

Although the officers were unable to establish the preimpact speed of either vehicle, they were able to compute the minimum speed of the Kueker minivan following collision to be twenty-three miles per hour and the minimum speed of the Cox pickup after impact to be eighteen miles per hour. The troopers concluded the Kueker minivan was traveling at a speed greater than the Cox pickup at the time of the collision. They found no evidence Cox was exceeding the legal speed of fifty-five miles per hour. The minivan had its parking lights on at the time of the collision.

The State introduced evidence of oral and written statements made by Cox within a few hours after the accident. In these statements Cox said he intended to turn north at the intersection, he saw the Kueker minivan approaching from the south with its turn signals on indicating it would turn east, and that the collision occurred as he pulled out from the stop sign and began to turn north. He thought he stopped but did not remember. He told the patrolman he had his seat belt on.

At trial, Cox testified he did not have his seat belt on, that he had not stopped or slowed down at the stop sign nor had he turned to the left. He testified he had got up at approximately 6:30 a.m. and had completed his farm chores. He then decided to pick up his combine that he had left at a farm in the area. He drove his grandparents' pickup. He had traveled the road to where the combine was located a few times and was somewhat familiar with the intersection. He knew he was required to stop at the intersection. He stopped for gas approximately four miles from the accident site and picked up a can of pop and a candy bar. As he was approaching the intersection from the west he was traveling forty-five to fifty miles per hour. He testified that he had apparently "dozed off" as he approached the intersection. When he awoke, he saw the stop sign and approaching vehicle and immediately slammed on his brakes.

## IV. *Vehicular Homicide.*

Cox was charged with violating Iowa Code section 707.6A(1)(b) (1989) (as amended by 90 Acts, ch. 1251, § 55), which provides:

A person commits a class "C" felony when the person unintentionally causes the death of another by ... [d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

Section 321.277 provides:

Any person who drives any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving.

Every person convicted of reckless driving shall be guilty of a simple misdemeanor.

Before the adoption of section 707.6A, a driver involved in a fatal vehicle accident could be charged with involuntary manslaughter. Prior to 1978, involuntary manslaughter was defined by case law. Recklessness was required in the manslaughter charge involving motor vehicle cases.

*State v. Graff,* 228 Iowa 159, 165–66, 290 N.W. 97, 100 (1940). After the enactment of the new criminal code on January 1, 1978, involuntary manslaughter was defined to be a class "D" felony when the person unintentionally caused the death of another person by the commission of a public offense. We construe this statute to include the common law requirement of recklessness. *State v. Conner,* 292 N.W.2d 682, 686 (Iowa 1980). In *Conner,* we affirmed the district court's dismissal of the criminal charge of involuntary manslaughter where the State was relying upon the defendant's running of a red light as the public offense to support the charge. *Id.* at 683.

## V. *Sufficiency of Evidence.*

Although the district court thought it a close question, it found several factors supported its denial of the motion for a judgment of acquittal. The factors identified by the court were that "there were rumble strips, there was an unobstructed view to the south and east, there was a stop sign at the intersection, he should have seen the stop sign and he should have known he had to yield, he was familiar with the road, and he ran the stop sign at a rather substantial speed." In addition to these factors, the State urges the implausibility of Cox's testimony, the inconsistency of his testimony and his prior statements, and the fact that he gave false statements to investigating officers indicate a consciousness of guilt which supplies additional evidence in support of submitting the charge to the jury.

 Admissions made by a defendant are evidence. Admissions may be implied by the conduct of the defendant subsequent to a crime, including fabrication, when such conduct indicates a consciousness of guilt. A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid his defense. *State v. Odem,* 322 N.W.2d 43, 47 (Iowa 1982).

█ Under the circumstances of this case, we do not believe the statements made by Cox at the hospital after the collision indicate a consciousness of guilt of the crime of vehicular homicide. The jury could reject Cox's testimony that he fell asleep. However, this does not establish recklessness. It was the State's burden to prove that Cox was driving in a reckless manner. Here, the evidence establishes Cox failed to stop and yield as required by Iowa Code section 321.322. There was no evidence that Cox was speeding or operating his vehicle in an erratic manner. The fact that rumble strips and a "stop ahead" sign preceded the stop sign, does not elevate the stop sign violation from a simple misdemeanor to a class "C" felony. We reverse the defendant's conviction of vehicular homicide and remand for entry of a judgment of acquittal on this charge.

**REVERSED AND REMANDED.**