STATE of Iowa, Appellee,

v.

Jason Joshua VAN SCOYOC, Appellant.

No. 92–436.

Court of Appeals of Iowa.

Nov. 29, 1993.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Lawrence H. Schultz, County Atty., and Bruce A. Ingham, Asst. County Atty., for appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

The defendant, Jason Joshua Van Scoyoc, appeals the district court's judgment and sentences finding him guilty of four counts of vehicular manslaughter. He contends the district court erred in (1) refusing his request to hire an expert witness to testify at trial and (2) admitting a fifteen-mile-per-hour speed-limit sign into evidence.

Van Scoyoc was charged by trial information with four counts of vehicular homicide stemming from an accident at the Rock Creek Park campground in Clinton County. At his trial, Van Scoyoc testified that at approximately 9:30 p.m. on September 28, 1991, he left his home for the roller skating rink. He stated that before he left he had one glass of wine. At midnight Van Scoyoc left the rink and had coffee with some friends at a restaurant. Van Scoyoc testified that about 2 a.m. he met a friend, Jason Starns, who was driving his van. Starns asked Van Scoyoc to accompany Starns' friends and to drink some vodka. Instead of accepting the offer to drink vodka, Van Scoyoc decided to drive while the others drank.

Van Scoyoc further testified that at 6 a.m. he delivered one of his friends to a trailer and proceeded to Rock Creek Park to locate a quiet place to sleep. Van Scoyoc eventually parked at the boat ramp. At approximately 7 a.m. he decided to go home, considering the fact he had to attend work around 2 p.m. He began traveling out of the park. His speed was described by witnesses as "relatively fast." The witnesses indicated the van spun around and took off, moving relatively fast, "like if you would be late for an appointment." One witness heard squealing before the van came through the park. Another witness said he heard a vehicle accelerate,

tires squeal, and then saw the van coming through a fence.

As Van Scoyoc was driving up a hill on the park road, he dropped a cigarette. Van Scoyoc testified the cigarette burned his hands and he dropped it between his legs. As he attempted to pick up the cigarette, the van hit a bump in the road and Van Scoyoc lost control. He recalled the van veered to the right and then crossed the road to the left. Van Scoyoc stated he attempted to crank the wheel and brake but was unsure if he hit the brake or the accelerator. He testified he saw a tent and suddenly came to a stop.

Van Scoyoc also stated that when he got out of the van he discovered he had run over a tent containing a family of campers. Four members of the family were killed. When Van Scoyoc realized what had happened, he immediately ran for help. Van Scoyoc testified he found a telephone and called the sheriff's office. The sheriff later arrived on the scene and interviewed Van Scoyoc. He was interviewed by law officers at the scene and again at the sheriff's headquarters. The sheriff conducted a number of field sobriety tests which Van Scoyoc passed. Van Scoyoc also submitted to blood and urine tests for alcohol and drugs. The tests results indicated only a trace of alcohol and did not indicate the presence of drugs or any other offensive substances. The officers who were in contact with Jason testified that in their opinion Jason was not intoxicated.

Other witnesses at trial testified that on the morning in question they heard what appeared to be a car accelerate, then heard tires squeal. The accident investigation team videotaped the accident scene. The officers testified that according to their calculations the van was traveling at least 28.3 miles per hour.

The jury ultimately found Van Scoyoc guilty as charged. The district court sentenced Van Scoyoc to an indeterminate term of imprisonment not to exceed ten years on each count. The sentences were to run concurrently. Van Scoyoc appeals the conviction and sentences. We reverse and remand for a new trial.

This case involves the new statute entitled "Homicide or serious injury by vehicle," commonly referred to as "vehicular homicide." 1990 Iowa Acts ch. 1251, § 55 (codified as amended at Iowa Code § 707.6A(1)(b) (1991)). This statute provides:

1. A person commits a class "C" felony when the person unintentionally causes the death of another by either of the following means:

\*     \*     \*     \*     \*     \*

b. Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

Iowa Code § 707.6A (1991). Iowa Code section 321.277 entitled "Reckless driving" provides:

Any person who drives any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property is guilty of reckless driving.

Jason raises two issues for reversal. First, he contends the court erred in refusing to provide funds for the hiring of an expert witness to testify at his trial. Secondly, he claims the court erred in permitting a sign into evidence that showed a speed limit of fifteen miles per hour.

It was a certainty that the sole issue in the case would be whether Jason was guilty of recklessness in driving the van into and over the tent occupied by the campers. By reason of that issue being the key to the case, counsel for the defendant moved the court to provide funds to hire an accident reconstruction expert to analyze the physical evidence, including the road and terrain over which the vehicle traveled, and the statements of witnesses in order to establish what happened. The motion specifically stated:

The primary reason for retaining the expert would be to determine whether available evidence supports a conclusion that defendant (a) operated the vehicle without regard to the possible results of his actions; (b) knew or should have known that his conduct was likely to result in harm to another or another's property, and/or (c)

acted consciously without concern for the consequences of the act.

The defendant was indigent. His counsel indicated to the court that the study he requested in the motion would cost $3000. The court allowed the retention of an expert, but limited the amount of money for such expert to $2500. Being advised the expert could not furnish the needed information for that amount, counsel filed a further motion to add the $500 that would be needed to obtain the information that could be made available by the expert. The court authorized an additional $500 expenditure for the expert.

Following those motions, and nearer to trial, counsel for defendant moved the court to authorize an additional $2500 to obtain the testimony of the expert witness who had done the preparatory accident reconstruction work on the defendant's behalf. The court denied the application for additional funds to acquire the testimony of the expert. Defendant claims such denial was an abuse of discretion and was prejudicial error.

■ The defendant is entitled to effective representation of counsel. Effective representation of counsel includes the right to an expert witness. These rights are guaranteed under the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; *See English v. Missildine*, 311 N.W.2d 292 (Iowa 1981); *State v. Hancock*, 164 N.W.2d 330 (Iowa 1969). In *State v. Hancock*, the trial court denied defendant's application for funds to hire a handwriting expert in her defense. *Hancock*, 164 N.W.2d at 332. The supreme court, holding such denial constituted reversible error, stated:

An independent analysis of defendant's handwriting conducted by an expert of her own choosing could well have resulted in a conclusion diametrically opposed to that reached by Barton [the state's expert]. In denying her request the court effectively prevented defendant from even the possibility of obtaining evidence which may have been highly relevant and material to a meaningful defense. Such an opportunity could not have been denied a defendant of means. Defendant's indigency should

not be permitted to stand as a barrier to such vital evidence.

*Id.* at 333.

The Iowa Supreme Court treated this issue in a more recent decision, focusing on the question of whether the defendant made a sufficient showing that an expert's testimony was necessary to his defense. Commenting on the court's duties in considering a motion to hire an expert, the supreme court stated:

[T]rial court, in considering defendant counsel's application for appointment of an expert, should give substantial weight to defendant's application but should also:

Effect an objective evaluation of such application, taking into consideration all relevant factors.... If trial court, focusing upon needs of defense counsel, finds the application is reasonable then it should be granted, but if found to be frivolous, unreasonable or without underlying factual support then a denial is in order.

*State v. Coker*, 412 N.W.2d 589, 592 (Iowa 1987) (citing *State v. McGhee*, 220 N.W.2d 908, 913 (Iowa 1974)).

■ In the present case, the court had the opportunity to determine if the expert was necessary to the defendant's defense. The court answered that question in the affirmative and authorized $3000 for the preliminary work of gathering evidence and facts to assist the defendant in the analysis of the evidence available.

The two requirements for permitting the retention of an expert set out in Iowa Rule of Criminal Procedure 19(4) are (1) the defendant must be indigent and (2) the services of the expert must be necessary to the preparation and presentation of an adequate defense. The State does not contest that the defendant is indigent, and the trial court formerly found the services of an expert to be necessary to the preparation of the defense. Counsel for the defendant advised the court of the necessity for the expert to be available for testimony. Counsel made it quite clear to the court that such testimony was necessary to the defense.

The trial court, in denying the funds to allow defendant's witness to be present at

trial, indicated displeasure with the amount that had been spent in studying the feasibility of the expert's testimony; the concern the court had for the attitude of the county officials over the expenditure of funds; and the court's feeling that the amount per hour ($120) was excessive. However, counsel for the defendant showed the court that the State intended to call an expert whose cost had been $110 per hour.

We believe the defense's expert witness was necessary in order to counter the State's evidence. The trial court's decision is discretionary. We will reverse only if that discretion is abused. *Coker*, 412 N.W.2d at 593. We hold the trial court abused its discretion in refusing to provide funds to permit the defendant to have his expert witness available for trial.

The denial of the funds with which to acquire the services of the expert witness at trial denied the defendant the opportunity to offer expert testimony that may well have been vital on the issue of recklessness. It therefore denied the defendant of the most crucial evidence of the trial. While the State did not call the expert it initially intended to call—due to a failure in communication—the State, nonetheless, proceeded to qualify a sheriff's deputy as an accident reconstruction expert. The deputy testified regarding the speeds and manner of travel of the vehicle involved in the case, using the study and charts developed in conjunction with the State's hired expert.

Without the ability to offer expert testimony in opposition to the State's expert testimony, the defendant was unable to contest the opinion regarding the speed of the van as related by the deputy sheriff who testified concerning the study made by the State's expert. The inability to do so unquestionably prejudiced Van Scoyoc's defense. Con-

sequently, the denial of Van Scoyoc's ability to offer expert testimony in his trial denied him a fair trial.

The State contends counsel for the defendant did not make a proper showing as to what the testimony of the expert would show. The State argues that without such showing the court could not be in error in refusing to enable defendant to offer that testimony. It is quite clear from the record, however, that counsel for the defendant stated he needed the testimony of the expert to assist the jury in deciding the case. The fact that the defense expert's testimony was crucial to the jury's determination is apparent considering the only two elements of the crime of vehicular homicide, with which Van Scoyoc had been charged, are (1) whether defendant was reckless in the manner in which he drove the van and (2) whether he unintentionally caused the deaths of the victims.[1]

This is especially true in view of the evidence presented by the State regarding the speed and manner of operation of the van. The State planned to use accident reconstruction evidence by an expert. The trial court was aware of that intention. With that knowledge, the defendant's ability to counter that evidence became essential. It was quite clear from the discussions with the court and the applications made by counsel for the defendant that such was the purpose of the testimony. *See Coker*, 412 N.W.2d 589.

The trial court abused its discretion in denying defendant the ability to obtain the expert testimony he needed. We reverse on this issue and remand the case to the district court for a new trial.

■ Defendant raises a second issue. He claims reversible error resulted from the court's refusal to withhold from the jury the reference—in pictures and video—to the sign

---

1. The evidence was especially crucial in view of the Iowa Supreme Court's recent ruling in *State v. Cox*, 500 N.W.2d 23 (Iowa 1993). In *Cox*, the supreme court analyzed the evidence, holding the evidence did not show a willful or wanton disregard for the safety of persons or property. On the basis of the record, which showed that Cox ran a stop sign and collided with a vehicle rightfully in the intersection, the supreme court held this evidence failed to show recklessness as a matter of law. Although appellate counsel

does not raise the sufficiency of the evidence as a ground for reversal in the present case, and unless that issue is raised by postconviction relief proceedings we are not permitted to consider it, the similarities between this case and *Cox* are striking. Both Cox and Van Scoyoc drove without a valid driver's license. Cox committed a moving violation, while Van Scoyoc did not. The supreme court reversed Cox's conviction, ruling that the evidence was insufficient to prove recklessness.

that indicated a speed limit of fifteen miles per hour, when in fact the speed limit at that location was thirty-five miles per hour. While error did result from the court's action of permitting the sign to be shown to the jury, the court instructed the jury that to violate the speed limit, defendant would have had to be traveling in excess of thirty-five miles per hour. The court further instructed the jury that to find recklessness, the jury need not find that the defendant exceeded the speed limit.

While the trial court's instructions may have eliminated the prejudice resulting from the presence of the sign in the pictures, we hold that upon remand no evidence showing or describing the sign should be introduced. To summarize, we reverse the convictions in this case and remand to the district court for a new trial. We order that the speed-limit sign involved in this case shall not be allowed in the evidence, either by picture or description.

**REVERSED AND REMANDED FOR A NEW TRIAL.**

DONIELSON, J., takes no part.