2005 SD 25

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William J. JANKLOW, Defendant and Appellant.**

No. 23163.

Supreme Court of South Dakota.

Argued Nov. 16, 2004.

Decided Feb. 23, 2005.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Edwin E. Evans, Melissa C. Hinton of Davenport, Evans, Hurwitz & Smith, L.L.P., Sioux Falls, South Dakota, Attorneys for defendant and appellant.

SEVERSON, Presiding Circuit Judge.

[¶ 1.] William J. Janklow (Janklow) appeals from a jury verdict finding him guilty of reckless driving and second degree manslaughter for an August 16, 2003, collision which killed Randolph Scott (Scott). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2.] On August 16, 2003, Janklow was driving a white Cadillac south on Moody County Highway 13. He was traveling from Aberdeen, South Dakota to his home in Brandon, South Dakota after giving a speech at a county fair.[1] Janklow's chief of staff, Chris Braendlin (Braendlin) was a passenger in the vehicle. Meanwhile, fifty-five year old Scott and his friend, Terry Johnson (Johnson), were riding their motorcycles westbound on Moody County Highway 14.

[¶ 3.] Highways 13 and 14 intersect ten miles south of Flandreau, South Dakota. The intersection is controlled by stop signs for north-and southbound traffic on Highway 13. The east-and westbound traffic on Highway 14 does not have a stop sign at that intersection. The speed limit on both highways is 55 miles per hour. A corn field located northeast of the intersection blocked the view for southbound and westbound motorists approaching the intersection.

[¶ 4.] Approximately three or four miles north of the intersection, Janklow passed another vehicle traveling south on Highway 13. The driver of that vehicle testified that she was traveling approximately 55 to 60 miles per hour when she was passed by Janklow. She testified that, "he passed me as if I was standing still. I felt like I was parked on the side of the road and the car just went past real fast." At approximately 4:40 p.m., Janklow's southbound vehicle and the westbound motorcycles ridden by Scott and Johnson converged at the intersection. Johnson safely passed through the intersection approximately 50 yards ahead of Scott. Scott's motorcycle hit the side of Janklow's vehicle. Scott was thrown from his motorcycle and was pronounced dead

---

1. Janklow was a United States Congressman at the time of the collision. Prior to being elected to the United States House of Representatives, Janklow was the Governor of South Dakota for four terms from 1979 to 1987 and 1995 to 2003.

at the scene. Janklow's vehicle came to a stop in the soybean field approximately 285 feet south of the intersection. There was extensive damage to the side and rear portion of Janklow's vehicle.

[¶ 5.] Janklow was charged in Moody County with the offenses of failure to stop at a stop sign, speeding, reckless driving and second degree manslaughter. A jury trial commenced on December 1, 2003, in Flandreau. Janklow did not dispute that he failed to stop at the stop sign, nor did he dispute that he was driving in excess of the speed limit. However, there was conflicting testimony at trial as to his actual speed at the point of impact. The State's expert estimated that Janklow was traveling 71 miles per hour and Scott was traveling 59 miles per hour at the point of impact. Janklow's expert calculated Janklow's speed at 63 to 64 miles per hour at the point of impact.

[¶ 6.] In his defense, Janklow asserted that he was suffering from hypoglycemia at the time of the collision and did not consciously run the stop sign. Hypoglycemia results in the brain not getting the glucose it needs to function properly. Janklow is an insulin dependent diabetic. Janklow testified that he took a dose of insulin the morning of the accident, but that he had not eaten for at least eighteen hours prior to the collision. The experts offered by the defense testified that the effect of the insulin taken by Janklow would have peaked at the time of the collision. If he did not eat anything during the day to counteract the effect of the insulin, the experts opined that this would have resulted in low blood sugar or hypoglycemia.

[¶ 7.] Emergency personnel who arrived at the scene shortly after the collision testified that Janklow was asked about his diabetes and whether he had recently checked his blood sugar levels. Janklow told them that he had checked his blood sugar level earlier and that he had eaten earlier in the day. Janklow appeared to the emergency personnel and law enforcement to be distraught about the collision, but seemed alert and oriented with no difficulty speaking. Janklow indicated that he was fine and refused medical attention. The defense offered evidence that Janklow was offered candy and a sugary drink after the collision and that hypoglycemia can be countered relatively quickly if a diabetic receives sugar. Several days after the collision, it was determined that Janklow suffered a fractured wrist and a closed head injury.

[¶ 8.] Several witnesses testified that immediately after the collision Janklow said that he went through the intersection because he was trying to avoid hitting a white car. Because the accident involved a fatality, law enforcement asked Janklow for a blood sample to determine his blood alcohol level.[2] South Dakota Highway Trooper Jeff Lanning (Trooper Lanning) transported Janklow to the Flandreau hospital for the blood draw. The video camera in Trooper Lanning's patrol car recorded, with Janklow's knowledge, their conversation during the drive. The video was played for the jury at trial. On the tape, Janklow described approaching the intersection and slowing down for the stop sign when a white car came toward him from the east. Janklow told Trooper Lanning that he "gunned it" to avoid being hit by the white car and that he initially thought he had been hit by the white car. Eyewitnesses reported that the white car Janklow described was not in the intersection at the time of the collision.

2. Testing indicated that there was no alcohol present in Janklow's blood.

[¶ 9.] In its case in chief, the State offered "other acts" evidence from Jennifer Walters (Walters), Deputy Tony Aas (Deputy Aas) and Lyle Tolsma (Tolsma). Walters testified that on December 29, 2002, she and her family were traveling eastbound on Highway 14 in Moody County when they came to the intersection with Highway 13, the same intersection where the collision with Scott occurred. Walters testified that as they passed through the intersection, she heard tires screeching and gravel kicking up. She turned and observed a white Cadillac with dark tinted windows speeding through the intersection and continuing northbound on Highway 13. She testified that she estimated the vehicle's speed at 70 to 90 miles per hour and that the vehicle did not appear to have stopped at the stop sign. She testified that she believed that the driver applied his brakes at the last minute to avoid hitting her family's vehicle and that the vehicles came close to colliding. Walters used her cell phone to call 911 to report the incident.

[¶ 10.] Moody County Deputy Aas was notified of Walters' call and proceeded south on Highway 13 where he encountered a white Cadillac driven by Janklow traveling northbound. Deputy Aas testified that he locked his radar on the vehicle showing a speed of 86 miles per hour. He stopped the vehicle and recognized the driver as Janklow. He testified that he told Janklow about the call received from Walter and that Janklow responded that he was not paying attention to his speed and did not recall the stop sign. Deputy Aas advised Janklow to slow down and let him go.

[¶ 11.] The State also offered the testimony of former South Dakota Highway Patrolman Tolsma. Tolsma testified that on April 27, 2002, he was driving his patrol car through a construction zone on a highway outside Rapid City, South Dakota. He testified that because of the construction, one lane of the highway was closed. Two-way traffic traveled on an uneven temporary roadway consisting of the remaining concrete lane and a temporary asphalt lane. The two lanes of traffic were separated by pylons. The speed limit in the construction zone was 40 miles per hour. Tolsma testified that he observed a vehicle traveling toward him at a high rate of speed. According to his radar, the vehicle was traveling 84 miles per hour. As the vehicle neared, Tolsma testified that the vehicle's wheels dropped off the edge of the concrete and the driver jerked the vehicle back. Tolsma testified that it appeared the driver was about to lose control of the vehicle. Tolsma testified that he feared that the vehicle would collide with his patrol car so he pulled over as far as he could next to a concrete barrier and almost stopped. As the vehicle passed, he recognized the driver as Janklow. Tolsma did not stop the vehicle.

[¶ 12.] On December 8, 2003, the jury returned guilty verdicts on all four charges. Pursuant to SDCL 23A–27–13, the trial court granted a suspended imposition of sentence on the second degree manslaughter charge.

[¶ 13.] Janklow appeals his convictions and raises the following issues:

1. Whether the trial court erred when it denied Janklow's motion for judgment of acquittal on the second degree manslaughter charge.

2. Whether the trial court erred when it refused to give Janklow's requested jury instructions setting forth the defense of unconsciousness and denied Janklow's motion for a new trial on the basis of the refused jury instruction.

3. Whether the trial court erred when it admitted evidence of uncharged,

alleged other acts and denied Janklow's motion for new trial on the basis of the improperly admitted, unfairly prejudicial evidence.

4. Whether the trial court erred when it denied Janklow's motion for mistrial and motion for new trial on the basis of prosecutorial misconduct during the State's closing arguments.

5. Whether the cumulative effect of the alleged errors of the trial court deprived Janklow of his right to a fair trial.

## ANALYSIS AND DECISION

[¶ 14.] **1. Whether the trial court erred in denying Janklow's motion for judgment of acquittal.**

[¶ 15.] Janklow argues that the trial court erred in denying his motion for judgment of acquittal because the State failed to present sufficient evidence to establish beyond a reasonable doubt that he was guilty of second degree manslaughter.

[¶ 16.] Our standard of review is well established:

The standard of review for denial of a motion for judgment of acquittal is whether the "evidence was sufficient to sustain the convictions." "When reviewing sufficiency of the evidence, this [C]ourt, considers the evidence in a light most favorable to the verdict." "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." "We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence."

*State v. Running Bird*, 2002 SD 86, ¶ 19, 649 N.W.2d 609, 613 (quoting *State v. Ver-*

*hoef*, 2001 SD 58, ¶ 22, 627 N.W.2d 437, 442 (internal citations omitted)).

[¶ 17.] Janklow was charged with second degree manslaughter in violation of SDCL 22–16–20. That statute provides:

Any reckless killing of one human being, including an unborn child, by the act or procurement of another which, under the provisions of this chapter, is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree. Manslaughter in the second degree is a Class 4 felony.

SDCL 22–16–20.

[¶ 18.] The State had the burden of proving that Janklow recklessly killed Randolph Scott. SDCL 22–1–2(1)(d) defines "reckless" as:

(1) If applied to the intent with which an act is done or omitted:

. . .

(d) The words "reckless, recklessly" and all derivatives thereof, import a conscious and unjustifiable disregard of a substantial risk that the offender's conduct may cause a certa in result or may be of a certain nature. A person is reckless with respect to circumstances when he consciously and unjustifiably disregards a substantial risk that such circumstances may exist[.]

[¶ 19.] "[F]or someone's conduct to be deemed reckless, they must consciously disregard a substantial risk." *State v. Olsen*, 462 N.W.2d 474, 476 (S.D. 1990). "Recklessness requires more than ordinary negligent conduct." *Id.* "The difference between reckless behavior and negligent behavior is primarily measured by the state of mind of the individual." *Id.*

The difference between the terms "recklessly" and "negligently," as usually de-

fined, is one of kind, rather than degree. Each actor creates a *risk* of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is *not aware* of the risk but should have been aware of it.

*State v. Larson*, 1998 SD 80, ¶ 14, 582 N.W.2d 15, 18 (quoting *Olsen*, 462 N.W.2d at 476–77) (other citations omitted) (emphasis in original)).

[¶ 20.] Janklow argues that the State only established that he ran a stop sign. "However, the operation of a motor vehicle in violation of the law is not in and of itself sufficient to constitute reckless conduct, even if a person is killed as a result thereof." *Olsen*, 462 N.W.2d at 477. "Criminal responsibility for death resulting from the operation of a motor vehicle in violation of the law will result only if the violation is done in such a manner as to evidence a reckless disregard for the safety of others." *Id.* "Mere carelessness or inadvertence or thoughtless omission is insufficient." *Id.* (citation omitted).

[¶ 21.] The State argues that the risk that Janklow disregarded was the potential harm arising out of his speeding through a blind intersection without stopping. "Although it is not always possible for the State to directly establish that a defendant was aware of a risk, it can be done indirectly through the defendant's conduct." *Olsen*, 462 N.W.2d at 477. "Awareness can be established if the defendant acts in a manner that indicates a reckless disregard for the safety of others." *Id.* The State maintains that Janklow's disregard for the safety of others and his indifference to the consequences of his actions were demonstrated by his conduct of speeding through a stop sign at a blind intersection of two highways without stopping or looking for oncoming traffic.

[¶ 22.] As in *Larson*, this Court cannot say as a matter of law that Janklow's conduct did not constitute recklessness. Reasonable minds could differ as to this issue. In reviewing the denial of a motion for judgment of acquittal, this Court accepts "the evidence and the most favorable inferences that the jury might have fairly drawn from the evidence to support the verdict." *State v. Krebs*, 504 N.W.2d 580, 590 (S.D.1993) (citing *State v. Haase*, 446 N.W.2d 62, 65–66 (S.D.1989)). The State presented evidence that Janklow was speeding prior to the collision and passed a vehicle before the intersection at a high rate of speed. Although they disagreed as to the precise speed, both the State's expert and Janklow's expert calculated that Janklow was exceeding the 55 mph speed limit for the highway. The intersection where the collision occurred was a blind intersection due to a corn field blocking Janklow's vision to the east. The State presented evidence that Janklow was familiar with this intersection and was aware of the stop sign. There was a "stop ahead" sign warning of the stop sign at the intersection. Evidence was also presented that Janklow indicated immediately after the accident that he was slowing down for the stop sign, but went through the stop sign because of a white car in his lane. However, eyewitnesses refuted Janklow's statements regarding a white car. Janklow's passenger, Braendlin, testified that he recalled Janklow yelling a warning just before the collision. "[I]t is the function of the jury in resolving factual conflicts, to weigh the credibility of those who testify, and ascertain the truth." *State v. Moran*, 2003 SD 14, ¶ 36, 657 N.W.2d 319, 328 (citing *State v. Pugh*, 2002 SD 16, ¶ 9, 640 N.W.2d 79, 82). Our standard of review is not whether we would have reached the same verdict, but whether the "evidence was sufficient to sustain the convictions." *Larson*, 1998 SD 80, ¶ 9, 582 N.W.2d at 17.

There was sufficient evidence from which the jury could conclude that Janklow was aware of, yet disregarded, the risk of an accident occurring as a result of his conduct. Therefore, the trial court did not err in denying Janklow's motion for judgment of acquittal.

[¶ 23.] 2. **Whether the trial court abused its discretion in refusing Janklow's requested jury instructions regarding the defense of unconsciousness.**

[¶ 24.] Janklow claims that the trial court committed reversible error by refusing to give two requested jury instructions on the defense of unconsciousness. Defendant's requested Instructions No. 15 and 16[3] were rejected by the trial court because it found that the principles were already covered by other instructions and that the requested instructions were improper under the circumstances of the case.

[¶ 25.] Our standard of review for refusal to give a jury instruction is well-settled:

We review a trial court's refusal of a proposed instruction under an abuse of discretion standard. The trial court has broad discretion in instructing the jury. Jury instructions are satisfactory when, considered as a whole, they properly state the applicable law and inform the jury. Error in declining to apply a proposed instruction is reversible only if it is prejudicial, and the defendant has the burden of proving any prejudice.

*State v. Martin,* 2004 SD 82, ¶ 21, 683 N.W.2d 399, 406 (quoting *State v. Webster,* 2001 SD 141, ¶ 7, 637 N.W.2d 392, 394 (internal citations omitted)). "An erroneous instruction is prejudicial if in all probability it produced some effect upon the verdict and is harmful to the substantial rights of the party assigning it." *First Premier Bank v. Kolcraft Enterprises, Inc.,* 2004 SD 92, ¶ 40, 686 N.W.2d 430, 448 (citing *Carpenter v. City of Belle Fourche,* 2000 SD 55, 609 N.W.2d 751).

[¶ 26.] Generally, a criminal defendant is entitled to instructions on his theory of the case when evidence exists to support that theory. *State v. Charles,* 2001 SD 67, ¶ 19, 628 N.W.2d 734, 738 (citations omitted). However, "[t]he law in South Dakota is well settled on the point that courts are not required to instruct as to matters which find no support in the evidence." *State v. Jenner,* 451 N.W.2d 710, 720 (S.D.1990) (citations omitted). Further, "[i]t is axiomatic that there can be no abuse of discretion in the refusal of a proposed jury instruction that does not represent a correct statement of the law."

3. Requested Instruction No. 15 provided:

Unconsciousness, as that term is used in these instructions, need not reach the physical dimensions commonly associated with the term such as a coma; it can exist where the defendant physically acts in fact but, for reasons such as epilepsy and other convulsions and reflexes, metabolic disorders, and hypnotic states, is not, at the time of acting, conscious of his actions.

Requested Instruction No. 16 provided:

Where a person commits an act without being conscious thereof, the act is not a criminal act even though it would be a crime if it had been committed by a person who was conscious. This rule of law applies to persons who are not conscious of the acts they perform because they are suffering from hypoglycemia as a result of diabetes.

Evidence has been received which may tend to show that the defendant was unconscious at the time and place of the commission of the alleged offenses for which he is here on trial. If after consideration of all the evidence, you have a reasonable doubt that the defendant was conscious, as that term is used in these instructions, at the time the alleged offenses were committed, he must be found not guilty.

*State v. Downing*, 2002 SD 148, ¶ 27, 654 N.W.2d 793, 801.

[¶ 27.] Janklow presented witnesses who testified that, based on the information they were provided, in their opinion Janklow was likely hypoglycemic at the time of the collision. However, being hypoglycemic does not necessarily equate with an individual being "unconscious." That was a question of fact for the jury to determine.

[¶ 28.] "The defense of unconsciousness is based upon SDCL 22–3–1, which provides, in pertinent part: 'Any person is capable of committing a crime, except those belonging to the following classes: ... (4) Persons who committed the act charged without being conscious thereof[.]'" *Jenner*, 451 N.W.2d at 721 (alterations in original). In *Jenner*, this Court acknowledged that other courts have recognized that an unconsciousness defense might be established when the defendant's conduct is caused by a variety of circumstances, including epilepsy, somnambulism, hypnotism, and some physical trauma, or even emotional trauma. *Id.* (citing 1 LaFave and Scott, Substantive Criminal Law, § 4.9 at 543 (1986)). However, this Court specifically did not embrace those causes for unconsciousness defenses. *Jenner*, 451 N.W.2d at 721.

[¶ 29.] This Court must review the trial court's refusal of the jury instructions under an abuse of discretion standard. *Martin*, 2004 SD 82, ¶ 21, 683 N.W.2d at 406 (citations omitted). The trial court exercises broad discretion in instructing the jury. *Id.* (citations omitted). The trial court found that Janklow's requested Instruction No. 15 defining "unconsciousness" merely inverted the definition of consciousness. Further, the trial court found that this instruction was confusing because it defined unconsciousness as not being conscious. The jury was instructed on the essential elements of second degree manslaughter in Instruction No. 12. Instruction No. 13 instructed the jury as to the definition of *reckless or recklessly* requiring a "conscious" disregard of a substantial risk. Additionally, the jury was properly instructed as to the burden of proof. The jury was instructed that it had to conclude beyond a reasonable doubt that Janklow consciously disregarded a substantial risk when he committed the crimes alleged. Janklow was allowed to present extensive medical testimony regarding his condition at the time of the collision and counsel was able to argue to the jury that Janklow was not conscious when the collision occurred because he was suffering from hypoglycemia. Reviewing the jury instructions as a whole, they are an accurate statement of the law and inform the jury.

[¶ 30.] This case is distinguishable from the recent decision in *Luke v. Deal*, 2005 SD 6, 692 N.W.2d 165. In *Luke*, the trial court failed to instruct the jury on a well-settled legal principle. *Id.* at ¶ 21. In this case, the jury was instructed in Instructions No. 12 and 13 that the State had the burden of proving that Janklow consciously disregarded a substantial risk.[4] There

4. Instruction No. 12 provided:

The elements of the crime of manslaughter in the second degree, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:

1. The defendant caused the death of Randolph E. Scott.

2. The killing was reckless.

3. The killing was not excusable or justified.

Instruction No. 13 provided:

With respect to the charge of manslaughter in the second degree, the words 'reckless' or 'recklessly' means a conscious and unjustified disregard of a substantial risk that one's conduct may cause a certain result or may be of a certain nature.

was no abuse of discretion in the trial court's denial of Janklow's requested instructions.

[¶ 31.] **3. Whether the trial court abused its discretion in admitting other acts evidence.**

[¶ 32.] "In reviewing a trial court's decision to admit other acts evidence this Court will not overrule the trial court's decision unless there is an abuse of discretion." *State v. Jolley*, 2003 SD 5, ¶ 5, 656 N.W.2d 305, 307 (citations omitted).

"Upon review ... we must be careful not to substitute our reasoning for that of the trial court." *Larson*, 512 N.W.2d at 736. Thus, the question is not whether, had we been the trial judge, would we have admitted the prior bad acts evidence but whether the trial court sitting in this case abused its discretion by doing so. *Id.; State v. Rufener*, 392 N.W.2d 424, 426 (S.D.1986).

*Id.* (quoting *State v. Anderson*, 2000 SD 45, ¶ 93, 608 N.W.2d 644, 670).

This Court will only disturb decisions of the trial court regarding the admission of evidence if there is a clear abuse of discretion. *State v. Devall*, 489 N.W.2d 371, 374 (S.D.1992); *State v. Olesen*, 443 N.W.2d 8, 9 (S.D.1989); *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986); *State v. Percy*, 80 S.D. 1, 4, 117 N.W.2d 99, 100 (1962). " 'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " *Devall*, 489 N.W.2d at 374 (quoting *State v. Pfaff*, 456 N.W.2d 558, 561 (S.D.1990)). Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and

the facts, could have reached a similar decision.

*Jolley*, 2003 SD 5, ¶ 5, 656 N.W.2d at 307 (quoting *State v. Orelup*, 520 N.W.2d 898, 900–01 (S.D.1994)).

[¶ 33.] SDCL 19–12–5 (FRE 404(b)) governs the admission of prior acts evidence. It provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

SDCL 19–12–5. In *State v. Wright*, 1999 SD 50, ¶ 13, 593 N.W.2d 792, 797, this Court clarified that SDCL 19–12–5 is a rule of inclusion, not exclusion. Relevant other acts evidence may be admissible for purposes other than proving the character of the defendant or his propensity to act in conformity therewith. *See* SDCL 19–12–5.

[¶ 34.] "To determine the admissibility of other acts evidence the court must first determine: (1) whether the intended purpose is relevant to some material issue in the case, and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect." *Jolley*, 2003 SD 5, ¶ 8, 656 N.W.2d at 308 (citations omitted).

[¶ 35.] Prior to trial, the State filed notice that it intended to offer other acts evidence. Initially the State sought to introduce Janklow's driving record which included 12 speeding tickets from 1990 to 1994 and several accident reports. Additionally, the State wanted to introduce several law enforcement reports regarding uncited traffic violations occurring after

A person is reckless with respect to circumstances when the person consciously and

unjustifiably disregards a substantial risk that such circumstances may exist.

1994 while Janklow was governor of the state.

[¶ 36.] The trial court held several hearings on the admissibility of these other acts and ruled that all but two incidents were inadmissible in the State's case in chief. The trial court found that the Walters and Tolsma "close call" incidents were admissible in the State's case in chief under SDCL 19–12–5. The trial court made specific findings as to the purpose for which these other acts could be used. The testimony of Walters and Deputy Aas was admissible for the purpose of determining Janklow's prior knowledge of the intersection in question, Janklow's state of mind and the absence of inadvertence or mistake. The trial court found that the testimony of Tolsma was admissible for purposes of determining Janklow's state of mind and the absence of inadvertence or mistake.

[¶ 37.] To prove recklessness as an element of second degree manslaughter, the State had the burden of showing that Janklow consciously disregarded a substantial risk. The Walters' incident was relevant as evidence of Janklow's state of mind and his knowledge of the substantial risk of harm from speeding through that intersection without stopping. Tolsma's testimony describing Janklow's driving at an excessive speed in a construction zone and nearly losing control of his vehicle was relevant to establish that Janklow was aware of the risk created by his driving and his disregard for the safety of others. Prior to the testimony, and again in the final instructions, the trial court instructed the jury regarding the limited purposes for the evidence.

[¶ 38.] This case is distinguishable from the recent decision in *State v. Lassiter*, 2005 SD 8, ¶ 14, 692 N.W.2d 171, 176, as Janklow's state of mind or intent was clearly at issue in this case.

*Lassiter* dealt with using modus operandi or motive to prove identity. *Id.* Identity was not in issue in this case. However, Janklow's *mens rea* or state of mind was a question for the jury to determine. Thus, the more liberal allowance of prior acts evidence to prove *mens rea* is applicable in this case. *Id.* at ¶ 14 n. 2. "Relevancy is demonstrated where evidence is necessary to prove an element of the crime, not simply to demonstrate defendant's character." *Id.* (citing *State v. Red Star*, 2001 SD 54, ¶ 11, 625 N.W.2d 573, 577). "Once the evidence is found relevant, however, the balance tips emphatically in favor of admission unless the dangers set out in Rule 403 'substantially' outweigh probative value." *Wright*, 1999 SD 50, ¶ 14, 593 N.W.2d at 799 (citation omitted).

"The most striking aspect of.... [Rule 404(b)] is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject only to the rarely invoked limitations of Rule 403." *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir.1984). "The party objecting to the admission of evidence has the burden of establishing that the trial concerns expressed in [Rule 403] substantially outweigh probative value." *Larson*, supra, § 403.1.

*Wright*, 1999 SD 50, ¶ 16, 593 N.W.2d at 799 (alterations in original). "Damage to the defendant's position is no basis for exclusion; the harm must come not from prejudice, but from 'unfair' prejudice." *Id.* at ¶ 16, 593 N.W.2d at 799 (citing *State v. Holland*, 346 N.W.2d 302, 309 (S.D.1984)(other citations omitted)).

[¶ 39.] This Court must review the trial court's decision to admit these prior acts under an abuse of discretion standard. *Jolley*, 2003 SD 5, ¶ 5, 656 N.W.2d at 307. The issue is not whether

this Court would have made the same decision, but whether "any judicial mind, considering the law and the facts, could have reached a similar decision." *Id.* (citation omitted). " 'Abuse of discretion is the most deferential standard of review available with the exception of no review at all.' " *In re SD Microsoft Antitrust Litigation*, 2003 SD 19, ¶ 27, 657 N.W.2d 668, 678 (citations omitted). Under that standard, Janklow has not shown that the trial court abused its discretion in admitting these two prior acts.

 [¶ 40.] Janklow also objects to the trial court allowing the State to ask him on cross-examination whether he always stops at stop signs. However, Janklow opened the door to these questions by testifying that even though he did not have any memory of stopping at stop signs on the day of the collision, he testified "I'd stop at a stop sign. I just don't fly through them like that." *See Kremer v. American Family Mut. Ins. Co.*, 501 N.W.2d 765, 770 (S.D.1993); State v. Burtzlaff, 493 N.W.2d 1, 5–6 (S.D.1992) (holding once defendant "opened the door" to prejudicial other acts, State could cross-examine concerning these acts); *State v. Loop*, 477 N.W.2d 40, 42 (S.D.1991); *State v. Byrum*, 399 N.W.2d 334, 337–38 (S.D. 1987). The State did not introduce extrinsic evidence of any prior offenses or of Janklow's driving record. Under the abuse of discretion standard, we cannot say that the trial court erred in allowing this cross-examination.

[¶ 41.] **4. Whether the State committed prosecutorial misconduct warranting a new trial.**

 [¶ 42.] "In South Dakota, we approach prosecutorial misconduct using a two-prong analysis." *State v. Smith*, 1999

SD 83, ¶ 44, 599 N.W.2d 344, 354. "First, we must determine that the misconduct occurred." *Id.* (citations omitted). "If misconduct did occur, we will reverse the conviction only if the misconduct has prejudiced the party as to deny him or her a fair trial." *Id.* (citation omitted). The denial of a motion for mistrial is reviewed under an abuse of discretion standard. *State v. Ball*, 2004 SD 9, ¶ 16, 675 N.W.2d 192, 197 (citations omitted). Also, a trial court's ruling on a motion for new trial based on misconduct of counsel will not be disturbed unless there is a clear abuse of discretion. *State v. Stetter*, 513 N.W.2d 87, 90 (S.D.1994).

 [¶ 43.] In closing arguments, Janklow's counsel criticized the State for its failure to take a reading of Janklow's glucose after the collision or have the blood sample that was obtained for alcohol analysis also tested for glucose. Counsel for Janklow suggested by his arguments that the State was not interested in a "search for the truth." His counsel was also critical of the State's medical expert, Dr. Wilde. Defense counsel noted that the State had consulted with him only two weeks before trial and that he was not aware of Janklow's Atenolol prescription prior to trial.[5] In his rebuttal, the prosecutor responded to these comments by pointing out that the State did not test Janklow's blood at the time of the collision because Janklow indicated that his blood sugar levels were fine and he did not appear to be exhibiting signs of hypoglycemia. Further, the prosecutor informed the jury that Dr. Wilde was contacted "immediately when we learned about this goofy hypoglycemia defense."

---

5. Atenolol is beta-blocker used to lower blood pressure, lower heart rate, reduce chest pain, and to reduce the risk of recurrent heart attacks. Janklow presented medical testimony that Atenolol can mask the early symptoms of hypoglycemia.

[¶ 44.] Janklow's counsel did not object to the State's comments during closing arguments. Therefore, the trial court was not given an opportunity to consider the objection or admonish the jury prior to submitting the case to them. Counsel made a motion for mistrial based on the State's comments regarding the medical defense after the jury had begun deliberating. As an alternative to the motion for mistrial, Janklow requested a limiting instruction to the jury that Janklow had timely disclosed all reports in accordance with the trial court's discovery orders.

[¶ 45.] The trial court denied the motion for mistrial because it found that the comments were not so prejudicial as to warrant a mistrial and that the jury had already been instructed that the arguments of counsel were not evidence. "Under the settled law of this state, 'no hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts.'" *Stetter*, 513 N.W.2d at 90 (citations omitted). "Additionally, '[t]he trial judge was on the scene, had heard the arguments and had the opportunity to note whether they had any apparent effect on the jury. He apparently [did not] feel that they had and we accede to his judgment lacking any showing on the part of the defense of actual bias or prejudice.'" *Id.* (citations omitted) (alteration in original).

Janklow has not shown that the trial court abused its discretion in denying the motion for mistrial and motion for new trial based on these comments.

[¶ 46.] The second occurrence of prosecutorial misconduct alleged by Janklow occurred at the end of the State's rebuttal. Janklow argues that the prosecutor made a community conscience argument to the jury. "Community conscience arguments are improper." *Stetter*, 513 N.W.2d at 90 (citations omitted).[6] The State told the jury: "The stop sign couldn't stop him. Nothing could stop him, and it resulted in Randy Scott's death. I think Ladies and Gentlemen, you know what can stop him." The State also concluded its rebuttal by stating: "Folks, this is your county, these are your communities, these are your roads, and now this is your case." However, Janklow's counsel did not object to these comments at trial or when he made his motion for a mistrial. This objection was first raised following the verdict in Janklow's motion for new trial. The State argues that Janklow has failed to preserve this issue for appeal.

[¶ 47.] "The prosecutor has an overriding obligation, which is shared with the court, to see that the defendant receives a fair trial." *State v. Blaine*, 427 N.W.2d 113, 115 (S.D.1988) (citation omitted). "The prosecutor must refrain from

---

6. "An argument or comment by a prosecuting attorney to the effect that the people of a city, community, or county want or expect a conviction has resulted in numerous reversals, with the courts generally stating that the 're-mark' is a fact not in evidence and therefore a departure from the record." D.E. Evins, Annotation, *Prejudicial Effect of Prosecuting Attorney's Argument to Jury That People of City, County, Or Community Want or Expect a Conviction*, 85 ALR2d 1132, § 2(b) (1962–2004). "Other courts in reversing have assigned various reasons, such as (1) the tendency of the remarks to cajole or to coerce a jury to reach a verdict which would meet with public favor, (2) that it took but a trivial matter to prejudice the case of the accused where the alleged criminal act caused excitement in the community where it occurred and where the trial took place, or (3) that the effect of the improper argument was more likely to be regarded as erroneous where the issue of guilt was close and the verdict a harsh one." *Id.*

injecting unfounded or prejudicial innuendo into the proceedings, and [must] not appeal to the prejudices of the jury." *Id.* (internal citations omitted). This Court condemns this type of argument. However, Janklow failed to object to these comments at trial or in his motion for mistrial. The trial court was deprived of an opportunity to admonish the jury or give a curative instruction. "Having failed to give the trial court the opportunity to rule on this issue by objecting at the time, Defendant has waived this argument on appeal." *State v. Boston,* 2003 SD 71, ¶ 26, 665 N.W.2d 100, 109 (citing *State v. Corey,* 2001 SD 53, ¶ 9, 624 N.W.2d 841, 844). *See also State v. Handy,* 450 N.W.2d 434, 435 (S.D.1990) (holding that defendant did not preserve his challenge to alleged prosecutorial misconduct where he did not timely object). "Furthermore, we will not disturb the trial court's ruling on a motion for a new trial based on misconduct of counsel unless we are convinced there has been a clear abuse of discretion." *State v. Shult,* 380 N.W.2d 352, 355 (S.D.1986) (citations omitted). Janklow has not shown a clear abuse of discretion by the trial court.

■ [¶ 48.] In addition to the two occurrences of prosecutorial misconduct specifically alleged by Janklow on appeal, this Court is disturbed by the prosecutor's use of the other acts evidence. SDCL 19–12–5 (Rule 404(b)) begins by restating the prohibition in SDCL 19–12–4 (Rule 404(a)) against using evidence of a person's character or a trait of his character for the purpose of proving that he acted in conformity therewith on a particular occasion. While this Court finds that the trial court did not abuse its discretion in admitting the other acts evidence for a limited purpose, the prosecutor's attempt in his closing arguments to use the other acts evidence to suggest that Janklow had a propensity to commit this crime was improper.[7]

■ [¶ 49.] This Court finds that the trial court gave a proper limiting instruction to the jury as to the use of other acts evidence both at the time the testimony was presented and at the close of the evidence. Considering the record in its entirety, Janklow fails to show that the prosecutor's comments were so prejudicial that they resulted in a denial of due process.

[¶ 50.] **5. Whether the cumulative effect of the alleged errors by the trial court deprived Janklow of a fair trial.**

■ [¶ 51.] Janklow argues that the cumulative effect of the alleged errors in this case deprived him of a fair trial. "[T]he cumulative effect of errors by the trial court may support a finding by the reviewing court of a denial of the constitutional right to a fair trial." *State v. Perovich,* 2001 SD 96, ¶ 30, 632 N.W.2d 12, 18 (citations omitted). In light of our determinations on the foregoing issues and from our review of the entire record, we believe that Janklow did receive a fair trial.

[¶ 52.] Affirmed.

---

7. For example, the prosecutor improperly used the prior acts evidence in his closing arguments by stating to the jury:

And you can consider the December 29th incident concerning the issue of state of mind and inadvertence. You know what happened on December 29th. The stop ahead sign that he passed didn't stop him. The first set of rumble strips didn't stop him. The second set of rumble strips didn't stop him. The stop sign didn't stop him. Nothing could stop him. And he almost collided with the Walters family. Nothing could stop him. Maybe today.

[¶ 53.] CALDWELL, BASTIAN, RUSCH and VON WALD, Circuit Judges, concur.

[¶ 54.] SEVERSON, Presiding Circuit Judge, and CALDWELL, BASTIAN, RUSCH and VON WALD, Circuit Judges, sitting for GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, disqualified.