#30754-a-JMK
**2026 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

 v.

CHRISTIAN ELLIOTT CLIFFORD                 Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SANDRA H. HANSON
Judge

* * * *

KYLIE BECK
JACOB CARSTEN of
Minnehaha County Public
    Defender's Office
Sioux Falls, South Dakota

                                           Attorneys for defendant and
                                           appellant.


MARTY J. JACKLEY
Attorney General

ANGELA R. SHUTE
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff and
                                           appellee.

* * * *

                                           ARGUED
                                           JUNE 3, 2025
                                           OPINION FILED **03/11/26**

#30754

KERN, Retired Justice

[¶1.] Christian Clifford was convicted, after a jury trial, of aggravated eluding, reckless driving, driving under suspension, and failing to stop at a stop sign, stemming from events that occurred on April 6, 2023. During trial, the State elicited testimony from law enforcement officers concerning a telephonic report received earlier in the day on April 6, 2023. The report alleged that Clifford had been involved in a family dispute and was driving a red Toyota Camry. Officers patrolled the area of the reported incident and saw a red Toyota Camry. When an officer attempted to stop the vehicle, the driver fled at high speeds through residential neighborhoods. Pursuant to department policy, the officers did not pursue the vehicle. Prior to trial, Clifford moved to exclude the caller's statements through the testimony of the responding officers, asserting that the information contained in the call was hearsay and violated SDCL 19-19-401 and 19-19-404. The court denied the motion and defense counsel requested a "continuing objection under *Crawford* [*v. Washington*]," without further reference or proceedings on this issue. Clifford appeals, claiming the circuit court erred by admitting testimonial hearsay in violation of his Sixth Amendment right to confrontation. We affirm.

**Factual and Procedural Background**

[¶2.] On April 6, 2023, law enforcement received a call requesting assistance because of a family dispute at 316 South Prairie Avenue in Sioux Falls. The reporting party, a woman later identified to be either Anna Hall or Lindsey Hall, alleged that Christian Clifford was involved in the dispute and was driving a red Toyota Camry. Law enforcement issued a "be on the lookout" bulletin (BOLO), and

-1-

several officers responded to the area. Around 2:00 p.m., Detective Christian O'Brien with the Sioux Falls Police Department observed a red Toyota Camry backing out of the alley next to 316 South Prairie Avenue and identified "a native or Hispanic male with short hair in the driver's seat."

[¶3.] Detective O'Brien followed the Camry as it turned to travel south on South Prairie Avenue. After passing through the intersection of South Prairie Avenue and West 12th Street, Detective O'Brien activated his emergency lights. Initially, the driver turned on the right blinker and appeared to be pulling over. But the driver continued driving forward until the next intersection, where the driver made a left turn onto West 13th Street and rapidly sped up. Detective O'Brien followed the Camry onto West 13th Street and observed a cloud of dust that had been spun up into the air. He realized that the Camry had already traveled at least two blocks down the street. To make such progress, the Camry passed another vehicle and failed to stop at a stop sign. Detective O'Brien did not pursue the vehicle, in accordance with department policy prohibiting pursuit unless the suspect in the vehicle is about to commit a dangerous felony and is an ongoing threat to society.

[¶4.] Several officers were present in the area in response to the BOLO, including Officer Carlos Puente, Detective Nelson Leacraft, and Officer Scott Hildebrand. Officer Puente observed the Camry as it crossed the intersection of South Prairie Avenue and West 12th Street and viewed the driver through the driver's window. Officer Puente identified Clifford as the driver based on prior knowledge of his appearance through a known photograph. Detective Leacraft was

parked south of the South Prairie Avenue/West 13th Street intersection facing north in an unmarked truck as the Camry approached the intersection. Detective Leacraft viewed the driver through the windshield and identified Clifford as the driver based on prior knowledge of his appearance through photos and from in-person surveillance involving another matter. A warrant was issued for Clifford's arrest in May 2023, and he was charged by complaint with a number of driving related violations.

[¶5.]     Clifford was indicted on July 26, 2023, on four counts: (1) aggravated eluding in violation of SDCL 32-33-18.2; (2) reckless driving in violation of SDCL 32-24-1; (3) operating a motor vehicle with a suspended driver's license in violation of SDCL 32-12-65(2); and (4) failure to stop at a stop sign in violation of SDCL 32-29-2.1.[1] The State also filed a part II information alleging that Clifford had been convicted of two prior felonies.

[¶6.]     Clifford filed a motion in limine on March 14, 2024, seeking to exclude, inter alia, the following evidence:

- "Any reference, mention, or inference of any BOLO's made in regard[] to the Defendant;"

- "Any reference, mention, or inference . . . to any persons by the name of Anna Hall or Lindsey Hall;" and

- "Any reference, mention, or inference of the Defendant being associated with a red Toyota Camry[.]"

In support of the written motion in limine, Clifford argued such evidence was "inadmissible to prove character," relying exclusively on SDCL 19-19-404.

---

1.     SDCL 32-33-18.2 was amended in 2024 and is now separated into first-degree eluding and second-degree eluding, rather than aggravated eluding.

[¶7.]		A two-day jury trial was held on March 18 and 19, 2024.  Before selecting the jury, the circuit court considered the various motions in limine filed by the parties, including Clifford's motion to exclude specific prior wrongs or acts pursuant to SDCL 19-19-404.  Included within this motion was Clifford's request to exclude statements regarding the BOLO alert.  Clifford argued that the use of the word "BOLO" was unduly prejudicial, and Clifford's counsel suggested that the officers could instead testify that they "were looking to speak with [Clifford] in regard to a police matter."  The State argued that defense counsel's suggestion was unacceptable because the existence of the BOLO created a legal basis to stop the Camry, whereas law enforcement's desire to speak to someone about a pending matter did not.[2]  Further, the State asserted that the evidence was properly considered as res gestae because it explained the circumstances leading up to the attempt to stop the vehicle and the subsequent flight.  The circuit court denied the motion, reasoning that because law enforcement was legally permitted to stop the vehicle because of the BOLO, its existence was part of the circumstances leading up to the attempted stop and the officers should be permitted to explain why they were trying to stop the car.

[¶8.]		Clifford also argued that any reference to him being associated with a red Toyota Camry should be excluded.  In addition to the initial basis for exclusion under SDCL 19-19-404 contained in the written motion in limine, counsel for

---

2.	The State also informed the circuit court that it instructed the subpoenaed officers that they could not mention the underlying facts leading to the issuance of the BOLO or any details about the BOLO aside from the fact that a BOLO had been issued.

Clifford orally argued that such statements were precluded by SDCL 19-19-401, as irrelevant; SDCL 19-19-403, as more prejudicial than probative; and SDCL 19-19-801 through 803, as inadmissible hearsay. Counsel asserted that the statements were uncorroborated "out-of-court statements used to associate Mr. Clifford with the Toyota Camry." He argued that "allowing that to come in as the officers were looking for him in that vehicle without actual proper foundation or any actual connection to the vehicle through proper testimony would impermissibly push the jury towards consider[ation] of an improper association as actual evidence." Counsel told the court that Clifford did not own the vehicle or have any association with it aside from the information provided by the caller. Notably, counsel did not present any argument, facts, or circumstances regarding the Confrontation Clause, particularly whether the caller's statement about the red Toyota Camry relayed in the BOLO was testimonial.

[¶9.] In response, the State argued that the description given by the caller, including the information that Clifford was driving a red Toyota Camry, was admissible for its "effect on the listener," or, in other words, to explain why law enforcement officers were looking for a red Toyota Camry in the area. The circuit court denied Clifford's motion, rejecting the three bases for exclusion that defense counsel orally advanced—that the statement about the red Toyota Camry was irrelevant, was more prejudicial than probative, and was inadmissible hearsay. The court stated:

> The motion will be denied. Although the Court's not fully aware of all the circumstances of the case, it does appear to me that a red Toyota Camry and the defendant allegedly driving it is certainly relevant to the charges against him. It does not

appear to me to be a matter of unfair prejudice to him at all that a red Toyota Camry be mentioned in association with him. I do understand defense is arguing that hearsay was what led officers to look for that vehicle in the first place, but I don't believe that the fact that hearsay is ultimately inadmissible in court means that law enforcement officers can't rely upon out-of-court statements when making their investigations. It's just that when they come to present their testimony, they can't do so in the terms of presenting hearsay evidence to, you know, outright testifying as to hearsay, put . . . that [] in front of the jury. So this motion will be denied.

[¶10.] Following the court's ruling, defense counsel stated: "We would just note a continuing objection under *Crawford*[3] of . . . any out-of-[court] testimony in regard to prior associations with that red Camry." No further reference to or discussion of *Crawford* occurred.

[¶11.] The State called three witnesses in its case-in-chief: Detective O'Brien, Detective Leacraft, and Officer Puente. The State also offered a certified copy of Clifford's driving record, showing that his driver's license was suspended at the time of the incident, and three dash camera videos from Detective O'Brien, Officer Puente, and Officer Hildebrand, which showed the officers' view of the vehicle as they observed it.[4]

---

3. Defense counsel's reference is to *Crawford v. Washington*, 541 U.S. 36, 59 (2004), in which the United States Supreme Court addressed the Confrontation Clause, stating, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."

4. Detective O'Brien provided the foundation for the admission of Officer Hildebrand's dash camera video.

[¶12.] Detective O'Brien testified that he was in the area responding to a BOLO when he observed a red Toyota Camry pulling out of the alley next to the reported address. The State asked:

> Q: And you kind of answered it there, but why was that red Toyota Camry something of interest to you?
>
> A: The reporting party that called in stated that Christian Clifford was in a red Toyota Camry.
>
> Q: And you then observed said Camry; correct?
>
> A: Yes.

Detective O'Brien testified that he followed the Camry through the intersection of South Prairie Avenue and West 12th Street before activating his emergency lights to initiate a traffic stop. Instead of stopping, the Camry turned left onto West 13th Street and fled at a "high speed, passing a vehicle, and going through a stop sign without yielding." Detective O'Brien estimated that the Camry was traveling between 60 and 65 miles per hour in a residential area with a speed limit of 25 miles per hour and described the driving as "[e]xtremely fast and erratic" and dangerous.

[¶13.] The State next called Detective Leacraft, who testified that he responded to "a call for service" on April 6, 2023, "stating that a subject by the name of Christian was there in a red Toyota Camry, which was the subject that [Detective Leacraft's] unit was previously aware of and looking for." Detective Leacraft testified that he was familiar with Clifford and identified him in the courtroom. The State asked, "And what other information did you receive that day with regard[] to a one Mr. Christian Clifford?" Detective Leacraft responded that "[t]he

information was that he was at that current location and driving a red Toyota Camry." Detective Leacraft then testified that he observed the Camry as it approached the intersection of South Prairie Avenue and West 13th Street and saw the driver, whom he identified as Clifford. When Detective O'Brien activated his emergency lights, Detective Leacraft observed Clifford look into the rearview mirror while pulling the vehicle to the side of the road before turning onto West 13th Street and fleeing at a high rate of speed.

[¶14.] The State inquired about the circumstances surrounding Detective Leacraft's identification:

> Q: And was there anything blocking your view from seeing the driver of that vehicle?
>
> A: No, there wasn't.
>
> Q: No tinted windows on that vehicle?
>
> A: I was looking straight through the windshield, and the windshield obviously was not tinted.
>
> Q: And the sun wasn't in your eyes, anything like that?
>
> A: No.
>
> Q: So nothing obstructed your view.
>
> A: No.

Detective Leacraft testified that he was familiar with Clifford's appearance from observing "him in person on surveillance" and in photos. He described Clifford's driving during this attempt to flee from law enforcement as "highly dangerous."

[¶15.] The State's final witness was Officer Puente, who testified that he responded to a dispatch call to the area of 316 South Prairie Avenue relating to "a

BOLO subject that we were looking for in the area." Officer Puente identified Clifford as the subject of the BOLO and testified that law enforcement was also informed that "Christian was driving a newer red Toyota Camry." Prior to arriving on scene, Officer Puente familiarized himself with Clifford's appearance by reviewing a known photo. Officer Puente proceeded to the area of South Prairie Avenue and West 12th Street and observed the Camry as it crossed the intersection immediately before Detective O'Brien activated his emergency lights. Officer Puente testified that he saw the driver of the vehicle and identified him as Clifford. Officer Puente's dash camera video, admitted as Exhibit 3, showed his view of the Camry and driver through the driver's side window as the vehicle slowly traveled through the intersection.

[¶16.]     Officer Puente also described the character of the neighborhood, which was in his patrol area, as generally "there's a lot of people walking around sometimes during those hours, and kids outside." Given the time of day and residential nature of the area, Officer Puente testified that Clifford's manner of driving as he fled down West 13th Street was "[p]retty reckless."

[¶17.]     The State rested its case, and Clifford then testified in his own defense. He testified that he did not recall where he was on April 6, 2023 "[b]ecause nothing really happened important that day." He informed the jury that he neither owned nor had ever driven a red Toyota Camry and that the last vehicle he owned was a white 2012 Chevy Malibu. Additionally, Clifford testified that he was not driving because his driver's license was suspended. When asked on direct examination, he admitted that he had previously been convicted of two felonies, one involving a

crime of dishonesty. Clifford denied having family in the area of 316 South Prairie Avenue or fleeing from law enforcement in that area on April 6, 2023. Following Clifford's testimony, the defense rested its case.

[¶18.] On the second and final day of trial, the parties presented their closing arguments. The State replayed Detective O'Brien's dash camera video for the jury and argued that it satisfied the State's burden to prove the elements of the offenses charged beyond a reasonable doubt. Regarding the identity of the driver, the State highlighted Detective Leacraft's and Officer Puente's testimony. The State argued that both witnesses were familiar with Clifford's appearance and identified him as the driver after having a clear opportunity to see him in the vehicle.

[¶19.] During its closing argument, defense counsel attacked the credibility of the identifications, arguing that Detective Leacraft and Officer Puente had approximately ten seconds or one block of travel to observe the driver before making an identification. Counsel also argued that the dash camera videos did not clearly show the driver and that the jury was unable to assess the accuracy of the known photos of Clifford reviewed by the officers prior to traveling to the area.

[¶20.] During its rebuttal argument, the State urged the jury to review the videos admitted into evidence and consider the distance between the officers and the Camry when they observed the driver. The State also reminded the jury to "remember the circumstantial and direct evidence. The direct evidence in this case is the videos and the testimony from the officers, the eyewitnesses that were there. The circumstantial evidence would be that the red Toyota Camry is associated with

Christian Clifford based on the BOLO that you heard testimony to from the officers." The defense did not object to this statement.

[¶21.] The jury returned a guilty verdict on all four counts. The circuit court sentenced Clifford to a term of four years in the penitentiary for aggravated eluding, one year in the county jail for reckless driving, 30 days in jail for driving under suspension, and 30 days in jail for the stop sign violation. All four sentences were suspended, and the sentences for counts 2, 3, and 4 were ordered to run concurrently with the sentence for aggravated eluding. The aggravated eluding sentence was ordered to run consecutively to two unrelated felony sentences Clifford was serving.

[¶22.] Clifford appeals, raising one issue, which we restate as follows:

1. Whether the circuit court erred in admitting testimonial hearsay statements in violation of Clifford's Sixth Amendment right to confrontation.

**Analysis and Decision**

[¶23.] Clifford asserts that the circuit court erred in permitting the State's witnesses to testify about the contents of the call to law enforcement on April 6, 2023, particularly that the caller stated that Clifford was driving a red Toyota Camry. Because the caller did not testify, Clifford argues the court's evidentiary ruling violated the rule against hearsay in SDCL 19-19-802. He also argues that the admission of the caller's out-of-court statements were testimonial, depriving him of his Sixth Amendment right to confront and cross-examine the witnesses against him. *See Crawford v. Washington*, 541 U.S. 36 (2004). Clifford further contends that he was prejudiced by the court's admission of a testimonial hearsay

statement, and claims that because he is asserting a violation of a constitutional right, the State bears the burden to prove beyond a reasonable doubt that the circuit court's error was harmless.

[¶24.] "The Sixth Amendment to the United States Constitution provides that a criminal defendant has the right to be 'confronted with the witnesses against him.'" *State v. Dickerson*, 2022 S.D. 23, ¶ 27, 973 N.W.2d 249, 258 (citations omitted). In *Crawford v. Washington*, the United States Supreme Court "instructed that the right to confrontation guaranteed by the Sixth Amendment requires exclusion of *out-of-court testimonial* statements unless: (1) the witness is declared unavailable to testify; and (2) the defendant had a prior opportunity to cross-examine the witness." *State v. Richmond*, 2019 S.D. 62, ¶ 24, 935 N.W.2d 792, 799–800 (citing *Crawford*, 541 U.S. at 68–69) (emphasis added). The Supreme Court has made clear that the Confrontation Clause "applies only to testimonial hearsay," a two-word phrase that requires exclusion if the statements are (1) hearsay *and* (2) testimonial. *Davis v. Washington*, 547 U.S. 813, 823 (2006); *Smith v. Arizona*, 602 U.S. 779, 784 (2024).

[¶25.] "Testimonial statements are loosely defined as 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *State v. Little Long*, 2021 S.D. 38, ¶ 45, 962 N.W.2d 237, 254 (citations omitted). "Testimonial hearsay includes, at a minimum, police interrogations and prior testimony at a preliminary hearing, before a grand jury, or at a former trial." *Id.* (citation modified). Whether answers to questions posed by law enforcement are testimonial depends on the primary purpose for the questioning and the

surrounding circumstances. *Davis*, 547 U.S. at 822. Therefore, the determination of whether a statement is testimonial or nontestimonial must be made after consideration of the unique facts of each case. But here, we are presented with a sparse record containing little detail about the circumstances under which the challenged statements were made.

[¶26.]     Moreover, as noted above, Clifford did not raise hearsay or Confrontation Clause objections in his written motion in limine, although, on the morning of trial, he did orally raise a hearsay objection in his argument to the circuit court in support of his motion. However, the only mention of *Crawford* occurred *after* the court issued its ruling denying Clifford's motion when his counsel requested a continuing objection to the admission of the challenged testimony. At no time did Clifford ask the circuit court to determine whether the challenged statement was testimonial, nor did he present any of the facts or circumstances that must be considered before the court could determine whether the proffered statements were testimonial.

[¶27.]     "When a party deprives the trial court an opportunity to rule on the issue by failing to object to argument at the time the objectionable comments are made, he waives his right to argue the issue on appeal." *Veith v. O'Brien*, 2007 S.D. 88, ¶ 67, 739 N.W.2d 15, 34 (citing *State v. Janklow*, 2005 S.D. 25, ¶ 47, 693 N.W.2d 685, 701); *State v. Corey*, 2001 S.D. 53, ¶ 9, 624 N.W.2d 841, 844 (citation omitted) ("A defendant in a criminal case must give the trial court the opportunity to make a ruling on an issue before it will be reviewed on appeal."). Given the state of the record here, we decline to address Clifford's Sixth Amendment claim because he

failed to preserve the issue of whether the statement at issue was testimonial and whether its admission was in violation of the Confrontation Clause. *See Marquez v. United States*, 903 A.2d 815, 817 (D.C. 2006) (where defense counsel objected on "purely evidentiary grounds" based on hearsay, the court concluded the alleged Confrontation Clause violation was not adequately preserved for appeal).

[¶28.]        As to the hearsay objection that Clifford did raise below, we note that the circuit court's pretrial ruling was somewhat unclear as to the parameters of the allowable testimony from the law enforcement officers when referring to information related in the BOLO. The court acknowledged that the officers could rely on hearsay when investigating a reported matter, but then stated that "when they come to present their testimony, they can't do so in the terms of presenting hearsay evidence." As Clifford notes on appeal, at trial, the State elicited testimony from the officers regarding the caller's statement that Clifford was in a red Toyota Camry. He further notes that although the State argued such testimony was admissible as background context explaining the officers' actions, during the State's rebuttal argument in closing, the prosecutor used this testimony as substantive evidence, offered for its truth, to prove identity. In particular, the State urged the jury to consider the officers' testimony "that the red Toyota Camry is associated with Christian Clifford based on the BOLO." However, Clifford did not object to this statement, move to strike it from the record, or request a curative instruction. Without an objection, "the trial court [is] not given an opportunity to consider the objection or admonish the jury prior to submitting the case to them." *Janklow*, 2005 S.D. 25, ¶ 44, 693 N.W.2d at 700.

[¶29.]    But even if the admission or use of such testimony for the truth of the matter asserted violated the rule against hearsay, we are convinced, from our review of the record, that Clifford has not established prejudicial error that warrants reversal. *See State v. Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d 674, 686 (citation omitted) (explaining that an error is prejudicial if there is a "reasonable probability that, but for [the error], the result of the proceeding would have been different"). The strongest evidence presented by the State to establish the driver's identity was the live testimony of two officers indicating that they were familiar with Clifford's appearance, had a clear opportunity to view the driver of the red Camry, and positively identified Clifford as the driver.

[¶30.]    Officer Puente's dash camera video lends additional support to the testimony that there was a clear opportunity to view Clifford. The video generally depicts that it was light outside and Officer Puente's view of the West 12th Street/South Prairie Avenue intersection was not obstructed. Clifford drove through the intersection in the red Camry at a low speed prior to Detective O'Brien activating his emergency lights. Based on his position, Officer Puente had a clear view of the side profile of the driver through the driver's side window as the vehicle passed through the intersection. Additionally, Officer Puente testified that he was able to view Clifford through the windshield of the Camry as he stopped at a stop sign prior to entering the intersection.

[¶31.]    Detective Leacraft testified that he was familiar with Clifford's appearance, having viewed known photos of him prior to responding to the area, and from observing Clifford on a prior occasion as part of surveillance involving

unrelated matters. Detective Leacraft had an unobstructed view of Clifford as he approached the intersection of West 13th Street and South Prairie Avenue. He testified that he saw Clifford look into his rearview mirror as Detective O'Brien attempted to initiate the stop.

[¶32.] Given this compelling testimony from the officers, the caller's statement was not the only evidence suggesting that Clifford was the driver and, arguably, it was the weakest evidence on that point. The State did not mention the caller's statement in its initial closing argument, and, when mentioning the caller's statement during its rebuttal, the State reminded the jury of Detective Leacraft's and Officer Puente's testimony and asked the jury to review the dash camera footage. In light of that evidence, the caller's statements are "merely cumulative or corroborative of other evidence that was independently and properly admitted." *State v. Podzimek*, 2019 S.D. 43, ¶ 16, 932 N.W.2d 141, 147. Thus, Clifford has not shown that there was error reaching a level of prejudice that "undermine[s] confidence in the outcome." *Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d at 686 (citation omitted). Accordingly, we affirm.

[¶33.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.

[¶34.] GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.